SUNSWICK, The (UNITED STATES v.). See Case No. 13,624.

SUPERB, The (BOND v.). See Case No. 1,-624.

---

## Case No. 13,626.

### The SUPERIOR.

[5 Sawy. 83.] [1]

District Court, D. California. Feb. 25, 1878.

SHIPPING—TITLE TO VESSEL—RECORD.

A purchaser of a vessel from the owner of record at the custom-house will be protected as against a prior unrecorded sale, unless it appears that the last [recorded] sale is colorable and without consideration.

In admiralty.

McAllisters & Bergin, for libellants.
Milton Andros, for claimant.

HOFFMAN, District Judge. On the thirtieth of January, 1877, Matthew Nunan filed a libel against the above vessel to recover one thousand six hundred and eighty-seven dollars and thirty-one cents, being moneys alleged to have been laid out and expended by him for her benefit. On the sixth day of February, one Thomas D. Young appeared and filed his claim to the vessel. On the seventeenth day of March, the California Cracker Company filed a libel to recover the possession of the vessel and damages for her detention. On the thirtieth of April this libel was amended. On the twenty-seventh of March, Young filed a claim to the vessel, and on the eleventh of April, his answer to the libel of the cracker company. No further proceedings in the Nunan suit have been had; it being understood that the cracker company, if it should be adjudged to be the owner of the vessel, will satisfy Nunan's demand. The only question now before the court is whether the title and right of property in the vessel is in Thomas D. Young or in the cracker company.

Both parties derive their title from Frederick Clay. The deraignment of Young's title is as follows: November 20, 1875, F. Clay to H. Molyneaux; January 10, 1876, H. Molyneaux to S. Q. Clay, wife of F. Clay; January 29, 1876, S. Q. Clay by F. Clay, her attorney, to Orrington Betts; January 30, 1877, Orrington Betts to Thomas Young. All of these conveyances were duly recorded in the custom-house as required by law.

The cracker company's title is as follows: In March, 1876, the company commenced a suit in the Fourth district court of this state, against Frederick Clay, to recover the amount of two promissory notes, and attached the vessel as his property. In December, 1876, the company recovered judgment, and on the eleventh of December the vessel was sold on execution and bought by the company to whom the sheriff executed a bill of sale.

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

This bill of sale was not recorded until March 8, 1877, some thirty-seven days subsequently to the record of the conveyance to Young.

On the seventeenth of January, 1877, one Peter Lassen filed a libel in this court against the schooner for materials, etc.; she was then in possession of the company under the deed by the sheriff. She was seized by the marshal, and on the twenty-ninth of January was released on a bond given by Orrington Betts, who had appeared as claimant.

On the thirtieth of January the libel of Lassen was dismissed, his demand having been paid, and on the same day the bill of sale from Betts to Young was executed and recorded, and on the same day she was again seized on the libel filed by Nunan, and the subsequent proceedings were had which have already been detailed. The above facts are undisputed.

It results that the legal title to the vessel is in the claimant Young, under a series of conveyances duly executed and recorded, commencing with Clay's, the admitted owner, in 1873. The libel does not clearly disclose the grounds upon which the cracker company base their claim of ownership. It merely avers in substance that on the twenty-fifth of October, 1873, Frederick Clay became the owner of the vessel, and so remained until she was attached, and on the eleventh of December, 1876, sold to the libellants, as his property, by the sheriff. The records of the custom-house disprove these allegations. It is contended, however, that when Clay directed Molyneaux (who, it is admitted, only held the title as security for certain liabilities of Clay) to put the vessel in Mrs. Clay's name, his motive and design was to cover up and conceal the true ownership in fraud of his creditors; that no consideration was paid by Mrs. Clay, and that her husband was the real owner.

It is further contended that the conveyance by Mrs. Clay, through her husband as her attorney, to Orrington Betts, was in like manner colorable and without consideration, and that Clay remained the real owner. There is some reason to suspect, perhaps to believe, that this was the true character of these transactions. It appears, however, that when her husband's circumstances became embarrassed, Mrs. Clay placed the whole or a large part of her separate property at his disposal. It may therefore be, that when Clay directed Molyneaux to convey to his wife, he merely intended to reimburse her in part for the property he had received from her, and to so place the title that the vessel could not be reached by his creditors. The conveyance to Betts may have been in furtherance of the same design. Under the bankrupt act this would have perhaps amounted to a preference, if Clay was insolvent and Mrs. Clay was aware of it; but it did not constitute a fraud such as would render the vessel in Mrs. Clay's or Betts's hands liable to attachment and sale on execution as Clay's property for

his debts. But this point it is not necessary to consider.

For the purposes of this case I will assume that the vessel while she remained in Betts's name was in fact the property of Clay, and liable as such to attachment and execution for his debts, and that the sale by the sheriff passed, as against Betts, the title to the libellants. By section 4192 of the Revised Statutes it is provided that "no bill of sale, mortgage, hypothecation, or conveyance of any vessel, or part of any vessel, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation, or conveyance, is recorded in the office of the collector of the customs where such vessel is registered or enrolled." There is no proof whatever that Young had notice, either actual or constructive, of the sheriff's sale to the libellant. He was aware that there was, or had been some litigation between Betts and the sheriff in regard to her, for he had at Betts's request signed his replevin bond; but of the suit by the company against Clay he appears to have been wholly ignorant, as also of the fact that she had been sold to the company on an execution against Clay. The deed by the sheriff can have no greater effect than if Clay himself had been the real owner, had conveyed to the company, and had subsequently conveyed to Young, and the latter had first recorded his deed. Young's title, if bona fide, would in that case prevail by force of the statute, unless he had actual notice of the prior bill of sale. As Young had no notice of the previous sale to the company, his title can only be defeated by showing that the sale to him was wholly fictitious, that it did not represent a real transaction, and that the true ownership remained in Clay. Mere knowledge on his part that as between Betts and Clay the latter was the true owner, or that Betts held the title in trust for Clay would not affect his rights unless he was a party to a conspiracy on the part of Betts to defraud his cestui que trust, which is not pretended. Nor if aware that Betts held in trust for Clay, was he bound to inquire why Clay had put the title in his name, whether for convenience, or to secure it for his wife, or to put it beyond the reach of his creditors. The protection of the statute would be gone, and the transfer of property of this kind greatly embarrassed, if the purchaser who buys a vessel for a valuable consideration from the legal owner of record were put on inquiry as to matters of this kind and were bound, at his peril to ascertain the truth.

But in fact there is no evidence to show that Young had any knowledge or suspicion that Clay or Mrs. Clay were in any way interested in the vessel. His negotiations were conducted exclusively with Betts. He swears that he never spoke with Clay on the subject, and that he had no knowledge that he or any one besides Betts had an interest in or title to

the vessel. No attempt is made to disprove Young's statement, as to the payment by him of the purchase-money. He appears to have paid seven thousand dollars in cash, besides satisfying claims against her to the amount of seven or eight hundred dollars. He gives the name of the broker in this city upon whom the checks were drawn, and produces the promissory note given for the purchase-money, with indorsements showing the dates and amount of the payments made on account.

The advocate for the libellant has, with great diligence and ingenuity, collected various incidents of the sale to Young from which he infers that that transaction was wholly fictitious, and that Young was fully aware that Clay was the real owner. But I can discover nothing in the circumstances referred to, to justify the rejection of Young's positive statement that the transaction was a real purchase, and that he in good faith paid his money for the vessel in total ignorance of any title to her on the part of Clay, or of any sale of such title by the sheriff. Young must therefore be regarded as a bona fide purchaser for value, without notice, and as such, must be protected, even though, as between Betts and Clay, the real ownership was in the latter. Decree for claimant.